UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGIODYNAMICS, INC.,

                Plaintiff,

  -against-                               1:08-CV-0004
                                                (LEK/RFT)

BIOLITEC, INC.,

                Defendant.

**MEMORANDUM-DECISION AND ORDER**[1]

Currently before the Court is a Motion to dismiss, filed on April 11, 2008 by Plaintiff AngioDynamics, Inc. ("AngioDynamics") seeking to dismiss Defendant Biolitec Inc.'s ("Biolitec") First, Second, Fourth, and part of Third Counterclaims under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Dkt. No. 15. For the reasons set forth below, the Motion is granted in part and denied in part.

**I. Background**

AngioDynamics is a Delaware corporation in the business of developing, manufacturing, and selling medical devices for use by medical professionals to facilitate their treatment of patients. Compl. ¶¶ 1-2 (Dkt. No. 1). Biolitec is a New Jersey corporation involved in the development and production of photosensitisers for use in photodynamic therapy, as well as a developer and

---

[1] For printed publication by the Federal Reporters.

1

manufacturer of diode lasers, optical fibers, and accessories for application in a wide range of medical specialties. Answer ¶ 4 (Dkt. No. 11).

On April 1, 2002, AngioDynamics and Biolitec entered into a Supply and Distribution Agreement ("SDA") in which Biolitec named AngioDynamics the exclusive distributor of certain products, as defined in the SDA, within a specified territory. Compl. ¶¶ 10-11; Answer ¶ 46. Pursuant to Section 2.1(c) of the SDA, AngioDynamics was obligated to actively market, sell and distribute the products. Compl. ¶ 12; Answer ¶ 46. Further, pursuant to Section 7.1 of the SDA, Biolitec retained all the rights, title, and interest in and to all Biolitec technology. Compl. ¶ 13; Answer ¶ 10. Under Section 7.2 of the SDA, Biolitec represented that, to the best of its knowledge, the manufacture, marketing, sale, distribution, and use of the Products would not infringe any United States or foreign patent or other proprietary rights held by any third party. Compl. ¶ 14; Answer ¶ 49. Section 7.2 of the SDA further states:

> If a third party asserts that a patent . . . is infringed by the manufacture, marketing, sale, distribution, or use of a Product, . . . BIOLITEC agrees to undertake the sole and complete defense, at its sole cost and expense, of any such claim through counsel of its choice . . . .
>
> SDA (Answer, Exh. A).

AngioDynamics did not re-sell the Products purchased from Biolitec in the condition in which they were purchased from Biolitec, but rather modified them and incorporated them into separate AngioDynamics products. Answer ¶ 53. In the latter part of 1993, a third party, Diomed, Inc. ("Diomed") began communicating with AngioDynamics about alleged infringement by AngioDynamics on Diomed's patent. Answer ¶ 54. As a result of threats by Diomed regarding the alleged infringement, Biolitec and AngioDynamics entered into a Joint Defense Agreement ("JDA")

on or about November 24, 2003, with a reservation of rights regarding Biolitec's alleged indemnity obligation.  Answer ¶ 56.

On January 6, 2004, Diomed sued AngioDynamics ("Diomed Action"), alleging patent infringement and seeking a permanent injunction prohibiting AngioDynamics from distributing the alleged infringing products.  Compl. ¶ 19; Answer ¶ 57.  AngioDynamics demanded that Biolitec defend it pursuant to Sections 7.2 and 9.1 of the SDA.  Answer ¶ 58.  With a reservation of rights and in accordance with the JDA, Biolitec expended $1.6 million in attorney fees and expenses in defense of AngioDynamics in the Diomed Action.  Answer ¶ 59.  During the course of the Diomed litigation, however, the District Court for the District of Massachusetts issued a Memorandum and Order on Claims Construction, which held that the patent infringement claim in the Diomed litigation was not against the patent held by Biolitec; rather, it was against the processes, procedures, and techniques employed by AngioDynamics that were developed independently by AngioDynamics.  Answer ¶ 65.  Despite Biolitec's defense efforts, judgment was rendered against AngioDynamics, and Diomed was awarded damages for AngioDynamics' patent infringement of Diomed in the amount of $9,170,000, including prejudgment interest.  Answer ¶ 67.

Biolitec subsequently notified AngioDynamics that they terminated any further litigation defense of AngioDynamics in connection with the Diomed Action.  Answer ¶ 68, Exh. B.  Biolitec maintains that they never instructed or directed AngioDynamics as to what process or procedures should be used in connection with AngioDynamics' sale of its products, nor did Biolitec manufacture those products or develop the instructions for their use.  Answer ¶ 64.  Further, Biolitec maintains that the claims asserted against AngioDynamics in the Diomed Action are not subject to the defense obligation of Biolitec under Section 7.2 of the SDA because the claims do not relate to

the Products sold by Biolitec to AngioDynamics pursuant to the SDA; rather, the claims relate solely to the processes, procedures, and techniques developed independently by AngioDynamics with no input from Biolitec. Answer ¶ 61, 65. As a result, Biolitec demanded that AngioDynamics reimburse Biolitec for the total amount of the defense costs paid by Biolitec in connection with the Diomed litigation in the amount of $1.6 million. Answer ¶ 69, Exh. C.

On July 21, 2005, another third party suit was brought against AngioDynamics by VNUS Medical Technologies, Inc. ("VNUS") alleging patent infringement. Answer ¶ 70. Biolitec refused to undertake a defense in this litigation and continued to assert that the patent infringement claims against AngioDynamics were not subject to Section 7.2 of the SDA for the same reasons as in the Diomed Action. Answer ¶ 72.

On January 2, 2008, AngioDynamics filed this action against Biolitec seeking specific performance and/or money damages for breach of the SDA.[2] Complaint (Dkt. No. 1). Bioletic subsequently filed four counterclaims seeking, *inter alia*, damages in the amount of $1,614,246.04, the amount expended in defending AngioDynamics in the Diomed litigation. Answer (Dkt. No. 11). This Motion to dismiss the First, Second, Fourth, and part of the Third Counterclaims followed. Dkt. No. 15.

---

[2] On January 11, 2008, Biolitec, Inc. filed a Complaint against AngioDynamics, Inc. in the United States District Court for the Western District of Massachusetts seeking judgment against AngioDynamics in the amount of $1.6 million for defense costs Biolitec expended for AngioDynamics in connection with third-party litigation. On February 4, 2008, AngioDynamics filed a Motion to dismiss Biolitec's Complaint pursuant to Rule 12(b)(6). On October 2, 2008, the action was transferred to the Northern District of New York. Case No. 1:08-cv-1051.

## II. Discussion

A.   **Standard of Review**

A motion to dismiss a counterclaim, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading.  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss for failure to state a claim, a district court must accept all allegations in the counterclaims as true and draw all inferences in the light most favorable to the non-moving party.  See Ruggles v. Wellpoint, Inc., 253 F.R.D. 51 (N.D.N.Y. 2008) (citing In re NYSE Specialists Sec. Litig., 502 F.3d 89, 95 (2d. Cir. 2007)).  The burden undertaken by a party requesting dismissal of a pleading under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is ultimately likely to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'"  Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d. Cir. 1995) (internal quotation and citations omitted)).  Thus, to survive a motion to dismiss, a pleader must demonstrate "reasonably founded hope that the discovery process will reveal relevant evidence to support the claim."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1967 (2007) (internal quotation marks and citation omitted).  While Twombly does not require detailed factual allegations, it does require enough facts to state a claim to relief that is plausible on its face.  See Twombly, 127 S. Ct. at 1969, 1974.  Accordingly, a counterclaim should be dismissed on a motion to dismiss pursuant to Rule 12(b)(6) only where the pleader has failed to "raise a right to relief above the speculative level on the assumption that all of the [counterclaim's] allegations are true."  Id. at 1959.

B.   **First Counterclaim**

1.	Legal Standard

Under New York law, interpretation of a contract is a matter of law for the court to decide. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (quoting K. Bell & Assocs. Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)).  The court must determine whether the contract is unambiguous with respect to the question disputed by the parties. Id.  "'An ambiguity exists where the terms of [the agreement] could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . .'"  Id. (quoting Morgan Stanley Group Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)).  If no such ambiguity exists, courts must interpret the contract "so as to give effect to all of its provisions and 'cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist.'"  Net2Globe Int'l, Inc. v. Time Warner Telecom of New York, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) (quoting Pearce, Urstadt, Mayer & Greer Realty Corp. v. Atrium Dev. Assocs., 77 N.Y.2d 490 (1991)).

2.	Analysis

Biolitec's First counterclaim is that pursuant to Section 9.2 of the SDA, AngioDynamics is obligated to indemnify Biolitec in the amount of $1,614,246.04 for the attorney's fees and related expenses that Biolitec incurred in defending the claims against AngioDynamics in the Diomed litigation.  AngioDynamics argues that their indemnification obligation under Section 9.2 applies only to claims brought against Biolitec by third parties and bases this assertion on the immediately succeeding section of the SDA, Section 9.3, which provides for the indemnification procedure to be followed in the event of a third party suit.

However, the express language of Section 9.2 does not limit indemnification only to claims by third parties. Rather, it provides for indemnification from and against any and all "Loss" that Biolitec may incur "to the extent that such Loss *arises out of or results from*" six different violations expressly listed. Since Section 9.2 only defines instances under which AngioDynamics would have an obligation to indemnify Biolitec, the definition of "Loss" under Section 1.13 becomes especially pertinent. That Section defines Loss very broadly and gives both parties a wide allowance of claiming a loss under the definition. Specifically, Section 1.13 states in pertinent part,

> **"Loss"** shall mean any and all damages, fines, fees, penalties, deficiencies, liabilities, losses and expenses, including without limitation . . . other expenses of litigation or other proceedings or *of any claim* . . . (such fees and expenses to include without limitation, all fees and expenses, including, without limitation fees and expenses of attorneys, *incurred in connection with (i) the investigation or defense of any third party claims* or (ii) successfully asserting or disputing any rights under this Agreement against any party hereto or otherwise). (Emphasis added.)

A review of Section 9.3 reveals that the purpose of the section is to provide the procedural mechanism for handling indemnification for third-party claims, which necessarily requires an agreement by the parties. In contrast, no such procedure must be agreed upon for first-party claims. A reading of Section 9.3 that limits indemnity under Section 9.2 only to third party claims would render the definition of Loss within Section 1.13 inoperable. The contract must be read so as to give full effect to all of provisions and to avoid a conflict where one need not exist. Therefore, a plain language reading of all three sections clarifies that AngioDynamics' interpretation of Section 9.3 is incorrect. Sections 1.13, 9.2, and 9.3, when read together, clearly indicate that Section 9.2 contemplates both third-party claims and first-party claims. As a result, AndioDynamics' Motion to dismiss the First Counterclaim is denied.

C. **Second Counterclaim**

In its second counterclaim, Biolitec argues that it is entitled to reimbursement of the expenses it incurred in defending AngioDynamics in the Diomed Action on the alternative theory of unjust enrichment. Biolitec claims that AngioDynamics received the benefit of Biolitec's defense in the Diomed action, and that as a result, AngioDynamics was unjustly enriched in the amount of $1,614,264.04. For the foregoing reasons, the Motion to dismiss this counterclaim is granted.

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Goldman v. Metropolitan Life Ins. Co., 5 N.Y. 3d 561, 572 (2005). The New York Court of Appeals has explained that

> [t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi-contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. . . . Briefly stated, a quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved*. . . .

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987) (citations omitted).

Since both parties agree that they entered into an agreement on April 1, 2002, the existence of a contract is undisputed. Answer ¶ 45; Compl. ¶¶ 10-11. Further, the subject matter of the issue in dispute is expressly addressed within Sections 9.1 and 9.2 (the parties' indemnification obligations to each other). Because the dispute is covered by the contract, a claim in unjust enrichment cannot proceed.

Thus, the motion to dismiss the second counterclaim is granted and the second counterclaim

is accordingly dismissed.

### C.    Part of Third Counterclaim

Biolitec's third counterclaim asserts, *inter alia*, that Biolitec owed no defense or indemnification obligation to AngioDynamics with respect to the Diomed Action, and that it is entitled to the return of the $1,614,246.04 it expended on behalf of AngioDynamics to defend them in the Diomed Action. For the following reasons, the Motion to dismiss is denied.

There is an actual controversy between Biolitec and AngioDynamics with respect to the Diomed Action. Answer ¶ 87. Biolitec maintains that it owed no defense or indemnification to AngioDynamics with respect to the Diomed Action, and that it is entitled to the return of the funds expended for AngioDynamics' defense in the Diomed Action. Answer ¶ 88. On the other hand, AngioDynamics argues that Biolitec owed it the duty of defense and indemnification in the Diomed Action and that Biolitec is liable for the judgment against AngioDynamics in the Diomed Action. Answer ¶ 89. As such, AngioDynamics seeks to dismiss the portion of the third counterclaim that asks the Court to declare that AngioDynamics must return the $1.6 million in defense costs. Motion at 8 (Dkt. No. 15). However, as AngioDynamics notes, the only underlying legal basis for this requested declaration is either contractual or quasi-contractual, as asserted in the First and Second Counterclaims, respectively. Because the First Counterclaim has not been dismissed, the Third Counterclaim, based upon the same legal theory, similarly survives the motion to dismiss.

The Motion to dismiss part of the third counterclaim is denied.

### D.    Fourth Counterclaim

Biolitec's Fourth counterclaim seeks an award of damages based on the loss it has incurred and/or will incur in connection with the litigation of the instant action. Answer ¶ 93. For the following reasons, the Motion to dismiss is denied.

Biolitec bases the Fourth counterclaim on Sections 9.2 and 1.13 of the SDA. Answer ¶ 92. It seeks indemnification from AngioDynamics for the Loss it will incur in connection with the litigation of this action. Read together, Sections 9.2 and 1.13 of the SDA require indemnification for Loss, and Section 1.13 expressly includes within its broad realm of recoverable items "all fees and expenses, including, without limitation fees and expenses of attorneys, incurred in connection with . . . (ii) successfully asserting or disputing any rights under this Agreement *against any party hereto or otherwise*." (Emphasis added.)

AngioDynamics, on the other hand, argues that the Fourth counterclaim should be dismissed because the SDA does not contemplate indemnification for first-party claims, or, alternatively, because Biolitec has not successfully asserted or disputed any rights under the SDA (the same reasons set forth for dismissal of the First counterclaim).

However, because the Court holds that a joint reading of Sections 1.13, 9.3, and 9.3 of the SDA indicates that Section 9.2 contemplates both third-party claims and first-party claims, AngioDynamics would be obligated to indemnify Biolitec for attorney's fees incurred in connection with successfully asserting or disputing any rights under the SDA, under 1.13(ii), and therefore may be liable for attorney's fees resulting from this litigation. At this stage, accepting all allegations in the counterclaims as true and in the light most favorable to Biolitec, the Court finds that Biolitec may be entitled to indemnification of the loss it may incur in connection with the litigation of the instant action. Accordingly, the Fourth counterclaim is sufficiently pleaded.

Additionally, while the Fourth counterclaim pleads for present as well as future losses, Biolitec would be permitted, under New York law, to obtain a conditional judgment fixing the potential liability, which would produce no obligation onto AngioDynamics unless and until Biolitec is able to prove actual losses.  Finally, since the First counterclaim has not been dismissed because of the SDA interpretation allowing first-party claims, the Fourth counterclaim is similarly allowed to proceed.

The Motion to dismiss the Fourth counterclaim is denied.

### III.     Conclusion

Accordingly, it is hereby

**ORDERED**, that Plaintiff's Motion to dismiss the First, Second, Fourth, and part of the Third Counterclaims (Dkt. No. 15) is **DENIED in part and GRANTED in part**; and it is further

**ORDERED**, that Defendant's Second Counterclaim is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:     March 30, 2009
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge